The Chief Justice
delivered the opinion of the court.*
Col. Arthur Campbell, by his will, after making sundry devises, directed that his executor should sell a tract of land of 1000 acres, which he held near Louisville, so soon as it would bring twenty dollars an acre, on a credit of one, two and three years; and another tract of six hundred and twenty five acres in Tennessee, when it would bring five dollars an acre; and all his lands in Virginia not before bequeathed—and directed the money arising from thence to be applied to the payment of his debts and the legacies he had bequeathed, and the overplus to be equally divided between his four youngest daughters, after the death of his wife, who he allowed to receive the interest during her life. Col. Campbell having died, his will was duly admitted to *126 record in the county court of Knox county, at the September term, 1811, and his son, Arthur L. Campbell, one of the executors named in the will, took upon himself the execution of the will, the others therein named having declined doing so. Not long after taking upon himself the execution of the will, Arthur L. Campbell laid off into lots a considerable part of the tract near Louisville, and sold the same at different times for a very large amount.
A purchaser using the agency of another and taking the title to the agent to whom no fraud can be ascribed, cannot protect himself by the innocence of the agent if he himself acted with guile.
In this situation of the estate, Beard, who had intermarried with one of the four youngest of the testator’s daughters, on the second day of May, 1816, the wife of the testator having previously departed this life, agreed to sell to William Hogan his wife’s interest in the beforementioned residuary devise, for the price of $3600, and on the sixth of the same month, he made a formal deed of conveyance thereof to Hogan, who, on the same day, conveyed the same, for the same price, to Arthur L. Campbell.
In the month of November following, Beard and wife filed this bill to set aside the sale made by Beard of his wife’s interest, on the ground of its having been obtained by fraud, and to compel Campbell, as executor, to sell the residue of the land devised to be sold, and to account and pay over to them their share of the estate.
The circuit court, on a final hearing, dismissed the bill, and Beard and wife have appealed to this court.
The only question necessary to be decided is, whether the sale made by Beard of his wife’s interest, was obtained by fraud or not?
There is no pretext for imputing fraud to Hogan: But the fact is incontestably established, that he made the purchase not for himself but for Campbell. He had no wish to procure the interest for himself. The only motive for making the contract, was to secure a debt due from Beard, whose indigent circumstances afforded no other resources of payment, of that debt, in pursuance of a previous understanding between Hogan and Campbell, the latter became bound to pay. Considering the purchase as having been made for Campbell, the transaction in relation to him assumes a very different aspect from what it would have worn in relation to Hogan, had the purchase been made by him for his own benefit,
The interest sold by Beard is satisfactorily proven to be worth at least three times as much as the price he was to receive. It is true that inadequacy of price is not per se a *127 cause for setting aside a contract, but as evidence of fraud, it is always entitled to weight. And it is held, if there be such inadequacy, as to shew that the person did not understand the bargain he made, or was so oppressed that he was glad to make it, knowing its inadequacy, it will shew a command over him that will amount to fraud: (Newland on Contracts, 357-8-9, and the authorities there cited.)
Inadequacy of price is not per se a cause for setting aside a contract, but is evidence that the vendor did not know the value of the thing sold, or that under advantage had been taken of his necessities, and therefore is entitled to great weight.
Suggestio falsi and suppressio veri alike vitiate a contract.
It is proven that Beard was in needy circumstances and pressed for money. Had he, therefore known the true value of the interest he sold, it would have been iniquitous to take advantage of these circumstances, in order to obtain his interest for such an inadequate price. But it is apparent that Beard did not know the true value of the interest he sold. He was probably ignorant of the value of the lands devised by the testator to be sold. Of these, the tract near Louisville was by far the most valuable, and the price it would command had been greatly and unexpectedly enhanced, not only by the causes which operated in general upon the price of real estate in that town and its vicinity, but still more by the plan pursued by Campbell, of dividing and selling a part of the tract in lots or small parcels. This sudden and unexpected enhancement of price, cannot be presumed to have been known to Beard, who resided in a remote part of Knox county, at the distance of near 200 miles from Louisville. But the value of the interest sold by Beard, did not depend exclusively upon the price which the lands devised by the testator, would command. Much of its value depended upon the amount of the debts of the testator; for it was only an interest in the surplus, after the debts and legacies were paid, that Beard sold. The amount of the debts Beard did not know, nor had he any opportunity of knowing, and he had a right to calculate from the reputed embarrassment of the testator, that the amount of the debts was much greater than it appears to be from any thing shewn in this case. On the other hand, it is evident that Campbell knew not only the value of the lands devised by the testator to be sold, but the amount of the debts.
It was his duty, therefore, to have disclosed to Beard the information he possessed in relation to both, before he made the purchase, and the concealment of the true state of these facts, was a manifest violation of good faith, and sufficient to vitiate the contract; for it is a settled rule in equity, that suppressio veri, as well as suggestio falsi, is a good ground for setting aside a contract. But Campbell not only failed *128 in his duty in this respect, but it is in proof that he told Beard before he made the contract, that it was a good one for him, and advised him to make it, and it appears that Beard had, at that time, the utmost confidence in him.
To use the agency of an innocent 3d person in effecting a contract, when no satisfactory motive for so doing is assigned, is of itself an insignia of bad faith.
Hardin for appellant, Littell and Pope contra.
To these evidences of the want of good faith on the part of Campbell, we must add the indirect means of making the purchase through the medium of a third person. This oblique method of making the purchase, for which there is no satisfactory apology given, is, in itself, calculated to awaken suspicion, and connected with the inadequacy of price and the other features of the case, strongly evinces the unfairness of the transaction.
The decree of the circuit court must be reversed with costs, and the cause remanded to that court, that a decree may be there entered setting aside and annulling the contract, and that such other and further orders and decrees may be made, as may be sufficient to effectuate the relief sought in the bill, and shall not be inconsistent with the foregoing opinion.

Absent, Judge Rowan.