Judge Marshall
delivered the Opinion of the Court.
This bill was filed for the purpose of setting aside two instruments, by which James Christopher, the intestate, had conveyed to Temple Cruise, his whole estate, consisting of ten or twelve acres of land, five negro slaves, and a small personal property, in consideration that Cruise would support him while he lived, in substantial food and clothing of the ordinary kind used and made in the country, and upon the further consideration of three hundred and fifty dollars, alleged to have been paid in money, and a note for one hundred and thirty dollars given up to the grantor. The slaves are proved to have been worth about fifteen hundred dollars; the other property about five hundred dollars. The two instruments were executed within a short period; and in less than six weeks after the date of the first, James Christopher died, at about sixty years of age, childless and unmarried.
The instruments are impeached on the ground: First, that Christopher was incapable of making a contract for want of understanding. Second—that he was actually intoxicated when the instruments were executed, and that the consideration was grossly inadequate; and, third—that Cruise had procured the conveyance of the property by fraud, and undue influence and management, of which the bill makes various specifications.
Mental imbecility—not amounting to absolute disqualification— induces a vigilant, strict examination, in chancery, of the contracts made by one laboring under it; and when coupled with gross inadequacy of consideration, they constitute such evidence of fraud, as may vacate a contract.
A man of debilitated intellect, but still capable of managing for himself,gives out that he does not intend that any of his property shall ever go to any of his relations, and thus induces others to intrigue for the succession ; a party contrives to ingratiate himself with this man, and obtains his entire confidence, and also furnishes him with money, which he had no ready means to repay; then exerting the combined influence of the devoted friend and pressing creditor, induces him, when intoxicated, to execute a conveyance of slaves & other property, upon the consideration that the grantee shall pay the debts of the grantor, and support him for life; which contract is, afterwards, re-written, with modifications desired by the grantor, and by him again executed when he is perfectly sober: held that, as all the grantee paid, did, and undertook to do, on his part, did not amount to one third as much as the property was worth—tho conveyance must be set aside, as having been obtained by fraud.
*182 First. In relation to the first of these grounds, we are of opinion' that, although Christopher was not actually incompetent, he was reduced, by long habits of intoxication, to a state of mental imbecility, bordering on actual incapacity; he was in such a condition even when sober, as required of those who .might be contracting with him, that they should be scrupulously regardful of his interest; and such as awakens the peculiar vigilance of the Chancellor in detecting any circumstance of inequality or imposition.
Second. The slight degree of intoxication existing at the date of the first instrument, is entitled to little if any influence on the case, especially as Christopher was entirely sober at the time of executing the second instrument, which is almost a reiteration of the first. But the consideration of the conveyance must be estimated at less than a third of the value of the property conveyed; and, although this gross inadequacy of price might not of itself have been sufficient to invalidate the contract, yet, when coupled with the imbecility of the grantor, it furnishes such evidence of fraud and imposition as, if not counteracted by other proof, might be sufficient to vacate the contract.
Third. Other circumstances in the case, and, indeed, the general tenor of the facts, corroborate, instead of weakening the inferrence of fraud. In consequence of the habits of Christopher, his mental condition and his determination, often expressed, that his kindred should not inherit his estate, his property lay an open prey to the artful and designing. For some time before the execution of the these writings, Cruise, by an intimate association with him, and by ministering occasionally to his appetite for drink, seems to have acquired and possessed his entire confidence, which continued undimished to the last; within a few months before the date of the transaction now in question, he loaned him money to the amount of one hundred dollars or more, the necessity or application of which is not apparent; and within the same period, assumed or paid his debts, (which do not appear to have been urgent,) to an equal or greater amount. Having thus become his principal, if not his *183 only creditor, he seems immediately to have turned upon him for the payment of his entire demand, and to have presented the alternative of paying in money, which it was known he could not do, or conveying his whole estate upon the terms which have been mentioned. Under this pressure, Christopher executed the first writing, under circumstances tending strongly to show that it was not done either with perfect freedom of will, or a perfect understanding of the subject.
Although it is apparent from the evidence, that the chief motive of Christopher in conveying his property, was to have his debts paid, by the grantee, the first writing, which was prepared under the direction of Cruise, does not mention the payment of his debts as a part of the consideration of the deed, nor impose any obligation to that effect. Which omission, if not a fraud in itself, must be taken as evidence that Cruise had already paid, or assumed to pay, the debts, and that this payment or assumption formed a part of the money consideration mentioned in the deed. And although an important part of the consideration of the transfer was to be performed by Cruise, in future, he did not become a party to the first instrument, nor bind himself, at that time, by any written covenant. It was to remedy this defect in the form of the first instrument, (which might be considered as an undue advantage taken by Cruise,) that Christopher was desirous to have a second instrument drawn, in which Cruise might be bound as well as himself. The two writings are essentially the same, evidencing the same contract, and standing upon substantially the same ground as to their consideration and validity. The chief difference being, that the first is in the form of a deed from Christopher to Cruise, und the second in the form of articles of agreement. If the only objection to the first instrument had been, that Christopher was intoxicated when he executed it, then, whatever might be the effect of that objection upon the first, it could not be applied to the second, which being executed when he was entirely sober, might have been good as a new contract or as a confirmation of the old one. But if, independently of this objection, the first may properly be considered as void in conse *184 quence of the great inadequacy of price, the extreme imbecility of Christopher, and the other circumstances which have been mentioned, as these circumstances are alike applicable to the second instrument, which was executed upon no other consideration than such as is expressed or implied in the first, and was intended merely to supply, in favor of Christopher, defects in the first, which was regarded, as obligatary upon him; we do not ceive it possible so far to distinguish between them, as to determine that the second either makes good the first, or is valid independently of it, and as a new contract. The two instruments evidencing but one contract, and constituting but one conveyance, are, as to all the purposes of the present enquiry, completely identified, and must stand or fall together. And regarding those circumstances only which are applicable to both, we are of opinion that they amount to such evidence of fraud or undue advantage taken of the condition of the vendor, as must invalidate the contract.
Inadequacy of price alone,when such as to show that the vendor did not understand the contract, or was induced to make it, to escape oppression, will vitiate the contract. And, though the inadequacy be not such as of itself to show either want of understanding, oppression, or command; yet if any such circumstance exist, and advantage is taken of it, to extort a hard bargain, the contract will not stand.
It has been said that inadequacy of price alone, if it be such as to shew that the vendor did not understand the bargain, or was so oppressed that he was glad to make it, knowing its inequality, will shew a command over him, that will amount to fraud. (Beard et ux. vs Campbell, 2 Mar. 127. Newland on Contracts, 359.) And it cannot be doubted, that although the inadequacy be not so great as of itself to demonstrate such want of understanding, or oppression, or command, as to vitiate the contract, yet if these circumstances exist in connection with it, and are taken advantage of as the means of procuring an advantageous bargain upon a consideration palpably inadequate, the contract cannot stand.
Upon the combined grounds, therefore, of great inadequacy of price, the imbecility of the vendor, and his entire confidence in the friendship and good intentions of the vendee, the corresponding influence of the latter over the former, on account of personal feelings, and the additional power'acquired and exerted over him as his principal or only creditor, and the evident design of acquiring, or at least using, that power for gain, of all of which the contract under consideration was the fruit. *185 we think such a command, and such an advantage are shewn on the part of the vendee, over the vendor, as amount to fraud and vitiate the contract.
Various circumstances relied upon as counteracting the evidence that a contract (made by a man of impaired intellect, upon a very inadequate consideration) was obtained by fraud: but which are held to be evincive of insincerity in some respects, and as tending, altogether, rather to add to, than to counteract, the evidences of frauds.
Several circumstances are relied on as giving a character to the transaction different from that which we have ascribed to it. These will be briefly noticed.
First. Before the conveyance to Cruise, Christopher had offered the property to several persons on the same terms; that is, that the vendee should pay his debts and support him during life. These offers were refused, either on the ground of inability to pay Christopher’s debts, or a distrust of his capacity to contract. But they do not appear ever to have been made, until Cruise had commenced lending him money, and paying or assuming his debts. They were then made in opposition to the tenor of his previous declarations, that he intended to emancipate his slaves. If they had been accepted by a third person, the same circumstances would not have concurred to characterise the transaction between the vendor and such vendee, as have been shewn to exist between Christopher and Cruise. But that they were repeatedly made at the period above designated, shews the pressure of his debts, and the uneasiness which they occasioned, and thus demonstrates the power of Cruise as his creditor, which was increased by the failure to make the desired arrangement with other persons.
Second. It is urged that Cruise did not want the property on the terms of the contract, and it is proved that when the first instrument between the parties was about to be executed, he said he preferred having the money, and if Christopher would pay it, he need not execute the writing. But he knew that Christopher could not pay, and this, as already stated, was nothing more than pressing the alternative of payment, which was impossible, or of conveying the property in discharge of the debt. Such a circumstance, so far from relieving the transaction from the imputation of fraud and oppression, is rather calculated, as being an evidence of insincerity, to stamp that character upon it. (Proof vs. Hines ca. temp. Talbot, 11; Newland on Contracts, 367.)
Third. At the same time, Cruise told a witness present, *186 to inform the present complainant, who was a brother of Christopher, that he might have the contract if he would pay him his demands. But it is impossible to say that this offer was made with the intention of carrying it into effect, or that, if accepted, it would have been performed. That it would not, and that it was made merely for the purpose of giving a shew of fairness to the transaction, is rendered probable by the other circumstances which have been mentioned, and by evidence in the cause tending to impeach the morality of Cruise.
Fourth. It further appears that, after the execution of the first instrument, Christopher expressed his satisfaction with the contract. He was satisfied (1.) because he was relieved from the pressure of his debts, without being compelled to separate his negroes—to which he was averse; (2.) because, as he said on some occasions, he was relieved from the hazard of their death, which would leave him without a support, and because, as he said to one witness, he was secured in a plenty of drink. As to the pressure and payment of his debts, enough has already been said. The other grounds of satisfaction expose so many weak points by which he might be approached and operated upon with effect in proportion to the imbecility of his understanding. His affection for his negroes, induced him to convey them all; and yet, he has no guaranty that they may not be immediately separated. The fear of their dying (for which there seems to have been no particular ground,) and of his losing the means of support thereby, may have induced him to take an inadequate price. But every slave owner is subject to the hazard of his slaves dying, and this hazard necessarily enters into the estimate of their value. It is, therefore, no ground why a reasonable man should take a third or a fourth of the estimated value of his slaves; but it might be made to operate as a ground of alarm to a weak and helpless old man. As to the certainty of a supply of drink, as a motive of satisfaction with the contract, nothing need be said.
There being nothing, then, in these circumstances to affect the conclusion already stated, we are of opinion, that the instruments of writing in the bill mentioned, *187 should be considered as having been obtained by fraud and undue means, and should therefore be set aside; and this having been done by the decree; and the proceedings directed by the Chancellor, for ascertaining and securing to Cruise the just amount of his advances made to and for Christopher, not being now before us for revision, the decree setting aside the said instruments, is affirmed.